BOOKER T. POWELL, PLAINTIFF APPELLANT v. DUKE UNIVERSITY INC., DUKE HOSPITAL, DUKE MEDICAL CENTER, DR. FERNANDO RUIZ, DR. P. J. IRIGARAY, DR. GIOTTO MENDEZ, AND JESSE McNIEL, DEFENDANTS APPELLEES

No. 7314SC332

(Filed 25 July 1973)

1. Insane Persons § 1; Statutes § 4— commitment for psychiatric examination — statute declared unconstitutional — conduct in reliance on statute protected

The legal principle that an unconstitutional statute is a complete nullity and cannot justify any acts under it must be construed with respect to the particular factual situation, and while a party may not assert a right arising out of a statute which has been declared unconstitutional, the principle does not strike down all undertakings made in reliance upon said statute; therefore, defendant doctors were entitled to rely on the provisions of G.S. 122-59 authorizing confinement of a patient for psychiatric examination at the time of acts

complained of by plaintiff, though the statute was subsequently held unconstitutional.

2. **Insane Persons § 1— commitment for examination — reasonableness of accepting physicians' actions — qualifications of committing physician**

Defendants who were doctors on the staff of a hospital whose chief purpose was to treat the mentally ill did not act improperly in accepting the committing physician's order with respect to plaintiff at "face value" and in detaining plaintiff as an emergency patient; therefore, it was unnecessary for the court to determine whether the limited license to practice medicine issued the committing physician made him a "qualified physician" to sign the emergency order (as provided by G.S. 122-59) challenged by plaintiff.

APPEAL by plaintiff from *Bailey, Judge,* 5 September 1972 Civil Session of DURHAM Superior Court.

Plaintiff instituted this action against the parties named in the caption and also John Umstead Hospital and its business manager, Leon B. Perkinson. In his complaint, plaintiff seeks to allege three claims for relief: (1) false arrest and imprisonment; (2) violation of his civil rights as guaranteed by the Constitution and laws of the United States; and (3) actionable negligence by defendants. He asks for $100,000 actual damages, $100,000 punitive damages, costs, attorney fees and other relief.

On 1 March 1972 an order was entered dismissing the action as to John Umstead Hospital. On 30 June 1972, by consent, summary judgment was entered as to Perkinson. At the 5 September 1972 civil session of the court, the cause was heard on (1) plaintiff's motion for summary judgment on the ground that there is no genuine issue as to any material fact and plaintiff is entitled to judgment as a matter of law against each of the defendants remaining in the action, and (2) defendants' motions for summary judgment on the ground that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. Plaintiff and defendants presented affidavits, exhibits, answers to interrogatories, admissions in pleading and other materials in support of their respective motions.

Plaintiff's pleadings and evidence tended to show:

On 23 December 1970 plaintiff went to the emergency room of Duke Hospital. While there he was forcibly restrained by defendant Ruiz, a resident in psychiatry at Duke Hospital, and by

a security guard working for the hospital. Plaintiff was re-strained at Duke Hospital for approximately three hours during which time defendant Ruiz, purportedly pursuant to authority granted by G.S. 122-59, filled out a so-called emergency hospital form to commit plaintiff involuntarily to the John Umstead Hospital at Butner, N. C. By virtue of said form, plaintiff was taken to Umstead Hospital by deputies sheriff of Durham County and was admitted to Umstead Hospital. Although plain-tiff demanded that he be released, he was kept in the Umstead Hospital until 1 January 1971.

While at Umstead Hospital, plaintiff was detained by de-fendants Doctors Irigaray, Mendez, and McNiel and was forced by said defendants to undergo medical treatment against his will; plaintiff was subjected to assaults by personnel working for Umstead Hospital under the direction of said defendants.

Defendants' pleadings and evidence tended to show:

On 23 December 1970 plaintiff went to the emergency room at Duke Hospital talking incoherently and "wanting a prescription" but was unable to explain the type of prescrip-tion he desired. While being examined by defendant Ruiz, plain-tiff, a very large man, became more and more hostile and uncooperative, looked very tense, had an aggressive expression and appeared ready to hurt someone. Plaintiff refused a physi-cal examination and medication offered to calm him down and said, "I am scheduled to be killed." Plaintiff became so hostile and combative that it was necessary to physically restrain him. After observing plaintiff for a period of time, defendant Ruiz formed the professional opinion that plaintiff was dangerous to himself and others. Thereupon, defendant Ruiz, pursuant to G.S. 122-59, committed plaintiff to John Umstead Hospital to which he was carried by Durham County officers and where he was received as an emergency hospitalization patient pur-suant to G.S. 122-59.

Following the hearing, summary judgment was rendered in favor of defendants and plaintiff appealed.

Prior to docketing the appeal, plaintiff and defendants Duke University, Inc., and Ruiz entered into a settlement agree-ment and the appeal was dismissed as to them. The appeal, therefore, relates to plaintiff's alleged causes of action against defendants Irigaray, Mendez and McNiel.

*Loflin, Anderson, Loflin & Goldsmith by Thomas F. Loflin III, for plaintiff appellant.*

*Attorney General Robert Morgan by Parks H. Icenhour, Assistant Attorney General, for defendant appellees Irigaray, Mendez and McNiel.*

BRITT, Judge.

We hold that the court did not err in entering summary judgment in favor of defendants Irigaray, Mendez and McNiel.

The admissions in pleadings and materials presented at the hearing disclose that at the time plaintiff was admitted to John Umstead Hospital on 23 December 1970, defendant Irigaray, a medical doctor, was the superintendent of said hospital and defendants Mendez and McNiel, also medical doctors, were on the medical staff of said hospital. Owned and operated by the State of North Carolina, John Umstead Hospital's chief purpose is to treat persons who are mentally ill, it being one of the institutions authorized by and subject to the provisions of Chapter 122 of the General Statutes.

Plaintiff contends appellees acted illegally in accepting and detaining him as an emergency patient. We will discuss the principal arguments advanced in support of this contention.

Plaintiff argues that G.S. 122-59 is unconstitutional for that it purports to authorize the deprivation of a person's liberty without due process of law. On 27 June 1973 (subsequent to oral arguments in the case at bar), by opinion filed in the case of *In Re The Confinement of Gracie Mae Hayes,* No. 7314SC149, this court held that the provisions of G.S. 122-59, G.S. 122-63 and G.S. 122-65 are unconstitutional. However, we do not think the holding in *Hayes* affects the result in this case.

[1]  There is a presumption in favor of the constitutionality of a statute. *State v. Hales,* 256 N.C. 27, 122 S.E. 2d 768 (1961). The legal principle that an unconstitutional statute is a complete nullity and cannot justify any acts under it, must be construed with respect to the particular factual situation, and while a party may not assert a right arising out of a statute which has been declared unconstitutional, the principle does not strike down all undertakings made in reliance upon said statute. *Roberson v. Penland,* 260 N.C. 502, 133 S.E. 2d 206 (1963).

We hold that appellees were entitled to rely on the provisions of G.S. 122-59 at the time of the acts complained of.

Granting that G.S. 122-59 had not been declared unconstitutional at the time of the acts complained of, plaintiff argues that his acceptance and detention by appellees were illegal for that the paper writing executed by Dr. Ruiz "committing" plaintiff to Umstead Hospital did not meet the requirements of the statute. Among other things, plaintiff argues that Dr. Ruiz was not a *qualified* physician within the purview of the statute.

Affidavits presented at the hearing tended to show: Dr. Ruiz received his medical degree from the University of Chile in 1968 and thereafter interned at the Berkshire Medical Center which is affiliated with the Albany (N. Y.) Medical College. He became a resident in psychiatry at the Duke University Medical Center on 1 July 1970. His credentials were reviewed by the State Board of Medical Examiners whose secretary advised Dr. Ruiz on 7 July 1970 that he had a limited license to practice medicine in connection with his residency training at Duke and on 31 August 1970 said secretary advised Dr. Ruiz that he had been granted a resident's training license to "cover him for his residency" at Duke. The activities and responsibilities under a resident's training license are entirely up to the discretion of the Duke University School of Medicine and part of a resident's training at Duke is to examine persons and commit such persons under G.S. 122-59 if said physician is of the professional opinion that the person is homicidal or suicidal or dangerous to himself or others.

G.S. 122-36 (f) provides that a "qualified physician" within the meaning of Chapter 122 is a medical doctor "who is duly licensed by this State to practice medicine." The State of North Carolina has delegated the matter of licensing physicians or medical doctors to The Board of Medical Examiners. G.S. 90-1, et seq. G.S. 90-12 provides for the issuance of a "limited license" to practice medicine within a defined district.

[2] We find it unnecessary to say whether the limited license issued to Dr. Ruiz made him a "qualified physician" to sign the emergency order challenged by plaintiff. Suffice to say, under the facts shown in this case, we do not think appellees acted improperly in accepting Dr. Ruiz's order at "face value."

Since we have held that the trial court did not err in entering summary judgment in favor of appellees, it follows that the

court did not err in refusing to enter summary judgment in favor of plaintiff. We find no merit in plaintiff's contention that the court erred in sustaining objections by defendants to certain of plaintiff's interrogatories as responses to the unanswered interrogatories would not change our decision.

The judgment appealed from is

Affirmed.

Judges CAMPBELL and BALEY concur.